IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MIKE ADINOLFI, ET AL,            ) | |
| ) | No: 3:23-cv-00766-MEG |
| Plaintiffs,     ) | |
| v.              ) | |
| ) | |
| City OF MILFORD              ) | |
| ) | |
| Defendant.     ) | DATE: May 9 ,2025 |
| ) | |

### JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT AGREEMENT

**I.  Introduction**

Plaintiffs, Mike Adinolfi, et al., and Defendant, City of Milford, Connecticut, (collectively the "Parties") by and through counsel, hereby jointly move this Court to enter an Order approving their Settlement Agreement and dismissing the above-captioned litigation with prejudice. As set forth below, the Parties have reached a Settlement Agreement that will resolve all claims in the instant lawsuit. Because the proposed Settlement Agreement satisfies the criteria for approval of an FLSA settlement agreement as set forth in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), the Parties jointly request the Court enter an order: (1) approving the Settlement Agreement as a fair and reasonable compromise of the instant FLSA action and ordering the Parties to perform the Settlement Agreement in accordance with its terms; (2) reserving jurisdiction with respect to this Action for the purpose of enforcing the Settlement Agreement; and (3) dismissing Plaintiffs' claims with prejudice upon final Court approval of the Settlement Agreement.

The Settlement Agreement is attached hereto as **Exhibit 1**.

II.  **Factual and Procedural History**

On June 13, 2023, Plaintiffs—current, and former, fire fighters employed by Defendant—filed a complaint alleging that Defendant had failed to comply with the FLSA by failing to accurately calculate their overtime rate for the purposes of overtime compensation. Dkt. 1, ¶ 22. Specifically, Plaintiffs allege that Defendants failed to incorporate additional compensation Plaintiffs received pursuant to their CBA—including longevity pay, certification pay, education incentive pay, and holiday pay—when calculating Plaintiffs' regular rate for FLSA overtime purposes. *Id*. ¶¶ 15, 16. That is, Defendant only paid Plaintiffs at a rate of one and one-half their contractual hourly rate for all hours worked beyond the FLSA overtime threshold and not one and one-half their regular rate as required by the FLSA. See *Id*., ¶¶ 16, 20. Plaintiffs requested three years backpay, an additional equal amount as liquidated damages, interest, and reasonable attorneys' fees and the costs associated with this FLSA action. *Id*., ¶25.

On September 29, 2023, Defendant filed its Answer and affirmative defenses to Plaintiffs' Complaint. Dkt. 26. Defendant denied that it had failed to properly pay Plaintiffs overtime at one and one-half their regular rate of pay for hours worked beyond 212 hours in a 28-day work period. *Id*., ¶¶ 16-26. Defendant further argued that its actions were made in good faith and that it had reasonable grounds to believe its actions did not violate the FLSA. *Id*., Fourth Affirmative Defense. In short, Defendant denied the merits of Plaintiffs' claims in their entirety.

On November 19, 2024, the Parties submitted a Joint Status Report to the Court which, amongst other things, notified the Court that their attempts at private mediation had been unsuccessful and that the Parties were interested in a settlement conference with a magistrate. Dkt. 38.

On November 21, 2024, the Court entered an order referring the instant action to Magistrate Judge Maria E. Garcia to conduct a settlement conference. Dkt. 39 The Court further ordered that

the Parties' current deadlines were suspended and would be reset after the settlement conference. Dkt. 40.

On December 2, 2024, Judge Garcia issued a Conference Order scheduling the settlement conference for January 31, 2025. Dkt. 46. Thereafter, the Parties engaged in three non-consecutive days of settlement conference negotiations. See Dkt. 52, 57, 59. On March 31, 2025, the third and final day of settlement conference negotiations, the Parties reached an agreement in principle to settle this FLSA action for a lump sum of $400,000.00 and a Memorandum of Understanding between Defendant and IAFF Local 944 governing how overtime will be paid after the date of settlement through the duration of the existing collective bargaining agreement and until a successor CBA is executed by the Parties or otherwise amended by the Parties. *See* Dkt. 59, 62; Ex. 1, ¶3. A copy of Plaintiffs' damages distribution is attached hereto as **Exhibit 2.** A Copy of the MOU between Defendant and IAFF Local 944 is attached hereto as **Exhibit 3**.

On April 1, 2025, by consent of the Parties, this action was transferred and reassigned to Judge Garcia. Dkt. 61.

On April 9, 2025, the Court ordered the parties to submit a Joint Motion for Approval of FLSA Settlement Agreement by April 18, 2025,[1] and scheduled a Fairness hearing for May 19, 2025. Dkt 62.

This Joint Motion for Approval of FLSA Settlement Agreement follows.

## III. TERMS OF THE PROPOSED SETTLEMENT

Counsel for the Parties have reduced the terms of the settlement in principle to writing (the "Settlement Agreement"). Ex. 1. Under the Settlement Agreement, the Defendant will pay a total of $400,000.00 ("Settlement Amount") to resolve the Plaintiffs' FLSA claims. *Id.*, ¶ 3.

---

[1] On April 17, 2025, the Court granted the Parties' Joint Motion for Extension of Time to file their Joint Motion for Approval of FLSA Settlement until May 2, 2025. Dkt. 65. The Court thereafter granted the Parties' joint motion for a further extension through May 9, 2025. Dkt. 68.

Specifically, this amount reflects each individual Plaintiff's decision to allocate 25% of their Settlement Amount (a total of $100,000.00) to satisfy their Contingency Fee Agreement with Plaintiffs' Counsel and to receive 75% of the Settlement Amount as backpay ("Backpay Amount") (a total of $300,000) as a regular payroll check. *Id.*, ¶¶ 4(a), 4(b). The Parties agreed that Plaintiffs and Plaintiffs' counsel would determine the method used to calculate Plaintiffs' damages. Ex. 1, ¶14. The Parties further agreed that Plaintiffs and Plaintiffs' counsel were solely responsible for determining the amount of attorneys' fees/contingency fees applicable to the Settlement Agreement. Ex. 1, ¶ 13. The Plaintiffs have each agreed to pay Plaintiffs' counsel a 25% contingency fee in exchange for representation in this matter. *Id.* These amounts will be distributed to Plaintiffs in accordance with Exhibit 1, ¶¶ 4(a), 4(b), and Exhibit 2. The Defendant will apply all applicable deductions and withholdings to the Backpay Amounts set forth in Exhibit 2 for each individual Plaintiff. Ex.1. ¶ 4(c).

In consideration of Defendant's payment of the Settlement Amount, Plaintiffs have agreed to a limited release, covering the Fair Labor Standards Act claims in the Complaint relating to overtime pay and the calculation of the overtime rate for time worked as fire fighters from June 23, 2020 through the date that the Settlement Agreement is approved by the Court and any parallel state law claims. *Id.* ¶ 16. The Plaintiffs also agreed to dismiss all claims asserted in the lawsuit with prejudice upon the Parties' execution of the Settlement Agreement and the Court's Order approving the Settlement Agreement. *Id.* ¶ 22.

If the Court enters an Order approving the Settlement Agreement, the Defendant will issue payment of the Settlement Amount within 21 calendar days of the Court's approval of the Settlement Agreement, dismissal of the case, and receipt of a completed IRS Form W9. *Id.* ¶¶ 4(a), 4(b), (4c).

IV. **LEGAL ANALYSIS**

    **A. Factors for Approving FLSA Settlement Agreements in the Second Circuit**

Under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), "absent [court] approval, parties cannot settle their FLSA claims through a private stipulated dismissal with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii)." 796 F.3d at 200; Thus, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Kazadavenko v. Atl. Adult Day Care Ctr. Inc.*, No. 21 CV 3284 (ENV)(LB), 2022 BL 131972, at *2 (E.D.N.Y. Apr. 14, 2022). (alterations original). "Where an FLSA settlement is deemed 'fair and reasonable' by the Court, it should receive judicial approval." *Allard v. Round Robin Operations*, LLC, No. 3:19-cv-01541-JAM, 2021 BL 501092 at *1 (D. Conn. July 13, 2021) (quoting *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

Second Circuit courts consider the following five, non-exhaustive, factors when determining whether a proposed settlement is fair and reasonable:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risk faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky*, 900 F. Supp. 2d at 335. (internal quotations omitted).

As demonstrated in greater detail below, each of the five *Wolinsky* factors weighs in favor of finding that the Settlement Agreement is fair and reasonable.

**B. The *Wolinsky* Factors Weigh in Favor of Approving the Parties' Settlement Agreement Because it is Fair and Reasonable**

    **1. Plaintiff's Range of Possible Recovery**

The first factor for determining whether a settlement agreement is fair and reasonable—the range of possible recovery—weighs in favor of approving the Parties' Settlement Agreement. The Parties agreed to a Settlement Amount of $400,000.00 dollars to be paid by Defendant within 21 days of this Courts approval of the Parties Settlement Agreement and Defendant's receipt of an executed Form W9. *Id.* ¶¶ 4(a), 4(b). Plaintiffs have distributed 25% of the Settlement Amount to satisfy their contingency fee agreement with Plaintiffs' Counsel and will receive the remaining 75% of the Settlement Amount (collectively $300,000.00) as a regular payroll check. Ex. 2. Notably, the Parties strongly disagreed with respect to the amount of backpay damages Plaintiffs should receive.[2] The Parties ultimately agreed that Plaintiff and Plaintiffs' counsel would determine the method used to calculate the amounts to be paid to each Plaintiff for the Settlement amount. Thus, Plaintiffs' settlement of $400,000 in backpay damages represents approximately 61% of Plaintiffs maximum potential recovery. Ex. 2. *See, e.g., Khan v. Yonkers Auto Ctr., Inc.*, No. 19-CV-5581 (KMK), 2022 BL 253746, at *3 (S.D.N.Y. July 21, 2022) (finding settlement agreement that represented "around 28% of [plaintiff's] best-case scenario recovery" was fair and reasonable); *Mendoza v. Conn. Closet & Shelf, LLC*, No. 3:20-CV-01449 (KAD), 2021 BL 503632, at *3 (D. Conn. Feb. 22, 2021) (finding settlement agreement that represented "approximately 54% of the Plaintiff's maximum potential recovery" as fair and reasonable); *Rodriguez-Hernandez v. K Bread & Co.*, No. 15-cv-6848 (KBF), 2017 BL 171257, at *4-5 (S.D.N.Y. May 23, 2017) (finding settlement agreement that represented approximately "26% of [Plaintiff's] potential damages" as fair and reasonable.). Moreover, the Parties have agreed to an

---

[2] Both Plaintiffs and Defendant had case law supporting their position as to how damages should be calculated.

6

MOU between Defendant and IAFF Local 944 governing how overtime will be paid after the date of settlement. Ex. 1, ¶3; Ex. 3. Since the Plaintiffs' net recovery is within the range found reasonable by other courts in the Second Circuit and at least part of the consideration for settlement includes the terms of the MOU governing overtime payments in the future, this factor weighs in favor of finding that the Settlement Agreement is fair and reasonable.

### 2. The Extent to Which the Settlement Will Allow the Parties to Avoid the Burdens and Expenses of Establishing Their Claims and Defenses

The Parties' Settlement Agreement allows both Plaintiffs and Defendant to avoid the burdens and expenses of establishing their claims and defenses. That is, absent the Settlement Agreement, the Parties would need to proceed through costly depositions, contested dispositive motions, a trial, and possible appeals. During each of the aforementioned stages of litigation, the Parties would bear the burden and expenses of establishing their respective claims and defenses. The Settlement Agreement, however, completely resolves the instant action and provides that no party admits or concedes to any of the allegations, claims, or defense raised in the pleadings. Ex. 1, ¶¶1,17. As such, the Settlement Agreement allows the Parties to completely avoid the burdens and expenses of establishing their respective claims and defenses. Therefore, this factor weighs in favor of finding that the Settlement Agreement is fair and reasonable.

### 3. The Seriousness of the Litigation Risk Faced by the Parties

The probability of either Party completely succeeding in the instant action is uncertain. As described above, the Parties dispute whether: 1) whether Defendant properly paid Plaintiffs overtime at one and one-half their regular rate for all hours worked beyond 212 hours in a 28-day work period; and 2) whether Defendant acted in good faith and thereby limited its damages liability to 2 years, rather than 3 years. *See* Section II, *Supra*. To affect a complete recovery of all Plaintiffs' alleged damages, therefore, Plaintiffs must not only show that Defendant failed to include all renumerations Plaintiffs receive in Plaintiffs' regular rate for the purposes of

7

calculating overtime, but also that Defendant failed to properly calculate their overtime rate in bad faith. Given that the Defendant may be able to convince a jury that it acted in good faith with respect to each of the disputed issues above, Plaintiffs success on the merits is not certain. On the other hand, a jury could find that Defendants acted in bad faith with respect to each of the disputed issues above. Therefore, Defendants success in the instant action is also uncertain. This uncertainty, however, supports the fairness and reasonableness of the Parties' Settlement Agreement. Quite simply, where the outcome of a litigation is uncertain, the parties are more likely to engage in fair and reasonable negotiations and avoid the risk of a complete loss at trial. That is certainly the case with the Parties' Settlement Agreement. Ex. 1, at 1 ("the Parties wish to avoid the *potential uncertainty*, expense, and delay of litigation and have therefore, based upon their negotiations, agreed to a settlement of the Parties' dispute") (emphasis added). Plainly, this factor weighs in favor of finding that the Settlement Agreement is fair and reasonable.

### 4. Whether the Settlement Agreement is the Product of Arm's-Length Bargaining Between Experienced Counsel and the Possibility of Fraud or Collusion

The Fourth and Fifth Factors considered by Second Circuit courts in finding a settlement agreement is fair and reasonable—whether the agreement is the product of arm's-length bargaining by experienced counsel and the possibility of fraud or collusion—similarly support approval of the Parties' Settlement Agreement. Quite simply, the record is devoid of any evidence that the Settlement Agreement came about through any other means than an arm's-length negotiation or that there has been any indicia of fraud or collusion during the negotiation process. As stated above, the Parties reached an agreement in principle to settle this matter only after three non-consecutive days of negotiation presided over by Judge Garcia. *See* Section II, *Supra*. Both Plaintiffs' counsel and Defendant's counsel zealously advocated for their respective client's interests and have experience litigating/negotiating FLSA matters similar to the instant action. Judge Garcia's

8

presence during the negotiation process, and facilitation of the negotiation process, also militates against the possibility of fraud or collusion. In light of the above, the fourth and fifth factors considered by Second Circuit courts in finding a Settlement Agreement fair and reasonable weigh in favor of approval.

### C. Other Factors Considered by Second Circuit Courts

Second Circuit courts also consider other factors, outside those identified in *Wolinsky*, when determining whether an FLSA settlement agreement should be approved. Settlement agreements that seek overbroad releases of claims, *Cheeks*, 796 F.3d at 206, settlement agreements with overreaching confidentiality agreements, *Luna v. J.S. Held LLC*, No. 2:21-CV-03072-JMW, 2023 BL 60350, at *4 (E.D.N.Y. Feb. 24, 2023), and settlement agreements containing overbroad non-disparagement provisions, *Gallagher v. Mountain Mortg. Corp.*, No. 22-CV-0715 (RPK) (JMW), 2022 BL 421627, at *7 (E.D.N.Y. Nov. 22, 2022), are all factors that Second Circuit courts find weigh *against* approving and FLSA settlement agreement. Fortunately, none of the factors identified above are present in the Parties' Settlement Agreement. The Settlement Agreement contains a narrow release of claims. Ex. 1, ¶ 16 (releasing FLSA and state law claims concerning overtime payment from June 23, 2020 through the date that the Settlement Agreement is approved by the Court.). Significantly, the Settlement Agreement does not contain a confidentiality agreement or a non-disparagement agreement. *See* Ex. 1. The absence of the factors considered by Second Circuit to weigh against approval of FLSA settlement agreements militates in favor of approving the Parties' Settlement Agreement.

### D. Contingency Fees

"In an FLSA case, the Court must independently ascertain the reasonableness of the fee request." *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229-30 (S.D.N.Y. 2016). Here, Plaintiffs' counsel requests a total of $100,000.00 to satisfy its contingency fee agreement

9

with each Plaintiff, or 25% of each Plaintiff's Settlement Amount. Ex. 2. Indeed, "the trend in this Circuit is toward the percentage method…which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (internal quotations and citations omitted). As such, courts in the Second Circuit routinely approve up to one-third of a plaintiff's total recovery in an FLSA case as contingency fees. *See Lai v. Journey Preparatroy Sch., Inc.*, No. 19 CV 2970 (CLP), 2022 BL 294509, at *4 (E.D.N.Y. May 26, 2022) (approving contingency fees of "one-third of the total settlement amount, a percentage typically found reasonable in this Circuit."); *see also Kazadavenko,* 2022 BL 131972, at *4 ("In the context of a settlement, attorney's fees totaling one-third of the total settlement amount are routinely approved in the Second Circuit.") (collecting cases). As stated above, each Plaintiff has agreed to pay Plaintiffs' counsel a 25% contingency fee in exchange for representation in this matter. Ex 1. ¶ 13. Thus, Plaintiffs' counsel is receiving less than the one-third of the total recovery amount typically approved by courts in the Second Circuit and is only seeking to recover the agreed to contingency fee from each Plaintiff. The amount of fees in the Parties' Settlement Agreement is plainly reasonable.

## V. CONCLUSION

For all of the above reasons, the Parties believe this Settlement Agreement will adequately resolve their respective claims and defenses as asserted in the above-captioned case. Accordingly, the Parties respectfully submit that the Settlement Agreement is fair and reasonable and should be approved by the Court.

Respectfully submitted,


PLAINTIFFS,
MIKE ADINOLFI, ET AL

By: /s/ Eric W. Chester
   Eric W. Chester [ct27172]
   Ferguson, Doyle & Chester, P.C.
   35 Marshall Rd.
   Rocky Hill, CT 06067
   Tel.: (860) 529-4762
   Fax.: (860) 529-0339
   Email: ericchester@fdclawoffice.com

By: /s/ Mark A. Linscott
   Mark A. Linscott
   Lauren P. McDermott
   Mark J. Murphy
   Mooney, Green, Saindon, Murphy & Welch, P.C.
   1620 Eye St Street NW, Suite 700
   Washington, DC 20006
   mlinscott@mooneygreen.com
   (202) 783-0010
   (202) 783-6088 (fax)
   *pro hac vice*

DEFENDANT,
CITY OF MILFORD

By /s/ Robin B. Kallor
   Michael J. Rose [ct14803]
   Robin B. Kallor [ct26536]
   Rose Kallor, LLP
   750 Main Street, Suite 309
   Hartford, CT 06103
   Phone: (860) 361-7999
   Fax: (860) 270-0710
   E-Mail: mrose@rosekallor.com
   rkallor@rosekallor.com

## CERTIFICATE OF SERVICE

      This is to certify that on this 9th day of May 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

      Eric W. Chester
      Ferguson, Doyle & Chester, P.C.
      35 Marshall Rd.
      Rocky Hill, CT 06067
      Tel.: (860) 529-4762
      Fax.: (860) 529-0339
      Email: ericchester@fdclawoffice.com

      Mark A. Linscott
      Lauren P. McDermott
      Mark J. Murphy
      Mooney, Green, Saindon, Murphy & Welch, P.C.
      1620 Eye St Street NW, Suite 700
      Washington, DC 20006
      mlinscott@mooneygreen.com
      (202) 783-0010
      (202) 783-6088 (fax)
      *pro hac vice*

      /s/ *Robin B. Kallor*
      Robin B. Kallor